IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 9, 2005

**STEVEN PAUL DESKINS v. STATE OF TENNESSEE**

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2001-B-909    Steve R. Dozier, Judge**

_____

**No. M2004-02638-CCA-R3-PC - Filed October 12, 2005**

_____

The petitioner, Steven Paul Deskins, was convicted of seven (7) counts of rape of a child and four (4) counts of aggravated sexual battery. On appeal, this Court reversed one (1) of the petitioner's convictions for aggravated sexual battery, finding that it violated due process and double jeopardy, but otherwise affirmed the remaining convictions. See State v. Steven Paul Deskins, No. M2002-01808-CCA-R3-CD, 2003 WL 21957083 (Tenn. Crim. App., at Nashville, Aug. 14, 2003), perm. app. denied (Tenn. Jan. 5, 2004). The petitioner filed a petition for post-conviction relief alleging, inter alia, ineffective assistance of counsel. Following an evidentiary hearing, the post-conviction court denied post-conviction relief. After a thorough review of the record and the applicable authorities, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court Affirmed**

JERRY L. SMITH, J., delivered the opinion of the court, in which, DAVID G. HAYES and JAMES CURWOOD WITT, JR., JJ., joined.

Dwight E. Scott, Nashville, Tennessee, for the appellant, Steven Deskins.

Paul G. Summers, Attorney General and Reporter; David H. Findley, Assistant Attorney General; Victor S. Johnson, District Attorney General; and Bernard F. McEvoy, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The facts supporting the petitioner's underlying convictions were summarized by this Court on direct appeal as follows:

The defendant's daughter, A.D.,[1] who was twelve years old at the time of trial, testified the defendant began to sexually abuse her during the 1999-2000 school year when she was in the fourth grade. The proof showed the abuse continued until February 2001. According to A.D., the abuse involved numerous incidents of anal intercourse, vaginal intercourse, digital penetration, oral sex, and other acts of sexual contact. . . .

A.D. testified that while she was suspended from school during the fifth grade, the defendant took her into his bedroom, took off her clothes, placed her on her hands and knees, and performed anal intercourse. A.D. testified the defendant told her to "relax." She stated he then told her to "flip over," and he performed vaginal intercourse. She further indicated that "gooey stuff" came out of the defendant's penis. She testified the defendant then got off the bed, made her touch his penis, and then made her perform oral sex on him. She also said he squeezed her breasts while she performed oral sex on him.

A.D. testified that during her fourth grade year while her mother was on a trip to Florida, the defendant called her into his bedroom, forced her to engage in anal intercourse, and then made her touch his penis. She further stated the defendant performed vaginal intercourse.

The victim then testified to a third incident which occurred while the family was visiting her grandmother. The victim indicated that during the visit, she and the defendant returned home to retrieve something the family had forgotten. She said that when they arrived at their home, the defendant made her engage in anal intercourse. She also stated he touched her vagina and penetrated it with his finger. She recalled that the defendant told her to "relax" during the incident.

A.D. recounted another occasion during which the defendant woke her and made her watch a pornographic movie while her mother and brother were asleep. A.D. testified the defendant instructed her not to tell anyone about the sexual abuse because he would "get in trouble" and "go to jail." She eventually reported the abuse to a relative.

Catherine Deskins, the defendant's wife and the victim's mother, testified she and the defendant had been married nearly thirteen years at the time of trial. She said they married when she was seventeen years old and the defendant was thirty years old. She stated the defendant was the father of both of her children, the twelve-year-old victim and a ten-year-old son. She testified the defendant consumed alcohol on a daily basis. She confirmed that during the spring of 2000, she went on a trip to

---

[1] It is the practice of this court to refer to juvenile victims of sexual abuse by their initials.

Florida while the defendant and the children remained at home. She further testified that during the victim's school suspension, the victim wanted to go with her to work rather than stay at home with the defendant. She stated the victim had significant behavioral problems in the fourth and fifth grades.

The victim's ten-year-old brother, the defendant's son, testified that two to four times per week, while he and the victim were home with the defendant after school, the defendant asked the victim to join him in the bedroom, where she would remain for ten to twenty minutes. He testified the victim sometimes seemed unhappy when she left the bedroom.

Detective Harry Meek of the Metropolitan Nashville Police Department testified regarding his interview with the defendant. In the recorded interview, which was played for the jury, the defendant initially said, "To my knowledge, I haven't done anything." The defendant later stated he did not remember having sex with the victim; it "could have happened;" he "couldn't swear" he did not have sex with the victim; and there had been times he could not remember having sex with his wife. The defendant then indicated it was possible the sexual abuse occurred while he was intoxicated or asleep. Detective Meek stated that two hours after the interview, the defendant telephoned him and wanted to know how long it would take to reunite his family if he admitted to the allegations.

Hollye Gallion, a nurse practitioner with Our Kids Center in Nashville, testified she examined A.D. on February 23, 2001, for diagnosis and treatment. The victim relayed to her the various acts of sexual abuse by the defendant. Gallion stated that A.D. was nearing adulthood physically; however, she appeared to be developmentally delayed and did not function at her age level. Gallion said she observed a deep "notch" in A.D.'s hymen which may or may not have been an injury caused by penetration. She indicated A.D.'s anal examination was normal. She testified it was possible for an adult male to engage in vaginal or anal intercourse with a child without causing detectable injury to the child.

Lisa Dupree, a counselor and social worker with Our Kids Center, also interviewed A.D. to obtain her history in preparation for Gallion's physical examination. She testified A.D. said the defendant "had been doing stuff," that "he put his private in her private," and that "this happened more than one time." Dupree stated the victim said the last incident of abuse occurred recently. According to Dupree, the victim also described another incident that occurred while her mother was on a trip. Dupree said the victim described ejaculation and reported both penile-rectal contact and penile-oral contact.

The State called Sherry Goodwin, an investigator for the Department of Children's Services, to testify in light of the defendant's attack upon the credibility of the victim. She testified that she interviewed the victim on February 23, 2001.

-3-

Goodwin stated the victim reported that the defendant began sexually abusing her approximately two years earlier. Goodwin said A.D. told her the defendant put his penis in her vaginal area, her "bottom," and her mouth. Goodwin recalled the victim also said the defendant touched her breasts. She said A.D. also described semen. Goodwin testified the victim said the defendant told her not to report the abuse because he would get in trouble. According to Goodwin, the victim said the last incident occurred during the week before the interview.

Martha Jane Maxwell, A.D.'s fourth grade teacher, testified A.D. was a special education student who functioned at least two grade levels below other students her age. Maxwell stated that at the beginning of the school year, the victim was very affectionate and greeted her with a "bear hug" every morning. However, during the middle of the school year, she began to notice changes in A.D.'s behavior. Maxwell said A.D. appeared to be unhappy, cried, and began to rub her body against boys in the classroom. She was so concerned that she reported this to school officials and to the defendant and his wife. She suggested to the defendant and his wife to "possibly take her maybe for a physical to see if there was something going on."

Dr. Joseph LaBarbera, a clinical psychologist, testified for the defendant that he evaluated the victim on February 14, 2001, and diagnosed her as having attention deficit disorder, major depression, and psychotic features. He explained that due to these "psychotic features," the victim had difficulty perceiving situations accurately. However, he opined the victim was not delusional. He also said prior testing showed the victim had an IQ of approximately seventy or eighty. On cross-examination, Dr. LaBarbera acknowledged that he was unaware of any prior sexual abuse and agreed that prior sexual abuse could cause or contribute to psychological problems.

Tammy Ramsey, a school psychologist, testified for the defendant. She diagnosed the victim as emotionally disturbed. She recounted the victim's statement that her deceased grandmother came on her bus and her grandmother's voice spoke to her. Ramsey also confirmed the victim was suspended from school for twelve days from February 16 to March 5, 2001.

Steven Paul Deskins, 2003 WL 21957083, at *1-3.

At the conclusion of the jury trial, the petitioner was convicted by the jury of seven (7) counts of rape of a child and four (4) counts of aggravated sexual battery. As a result, the petitioner was sentenced to an effective sentence of seventy (70) years. The petitioner appealed his convictions, arguing that the evidence was insufficient to support the convictions, that the trial court incorrectly admitted certain pieces of evidence and that the imposition of consecutive sentences for three (3) of the convictions was improper. On appeal, this Court reversed one (1) of the aggravated sexual battery convictions as being in violation of due process and double jeopardy. State v. Steven Paul Deskins, No. M2002-01808-CCA-R3-CD, 2003 WL 21957083, at *5-6 (Tenn. Crim. App., at

Nashville, Aug. 14, 2003), perm. app. denied (Tenn. Jan. 5, 2004). The Supreme Court denied permission to appeal.

Subsequently, the petitioner timely filed a pro se petition for post-conviction relief. Counsel was appointed and an amended petition was filed. The petition alleged, among other things, that trial counsel was ineffective because she failed to: (1) challenge the victim's competence to testify at trial; (2) failed to have the medical report from Our Kids reviewed by an expert and challenge testimony relating to hymenal injury; (3) failed to file a motion to suppress the petitioner's statement to the police; and (4) failed to call necessary witnesses and adequately investigate and confer with the petitioner.

## Evidence at the Post-Conviction Hearing

At the post-conviction hearing, trial counsel for the petitioner testified that she had been licensed to practice law since 1998, and had tried at least four (4) cases before a jury prior to the petitioner's trial. Trial counsel also testified that she was a former law clerk for the Court of Criminal Appeals. Trial counsel was retained by the petitioner and took over the petitioner's case from the public defender's office, and she met with those lawyers at length when she was first placed on the case.

Trial counsel stated that she met with the petitioner several times prior to trial and planned on developing a defense that argued that the victim was psychotic and that the jury could not reasonably rely on her ability to accurately perceive events.

Trial counsel could not recall whether she filed a pre-trial motion to determine whether the victim was competent to testify but thought that she recalled a hearing on the subject. She acknowledged that she did not recall objecting to the victim's competency at trial prior to her testimony.

Trial counsel admitted that she did not have the medical report from Our Kids evaluated by an expert because the petitioner could not afford one, and she did not think that she could get funds from the State that would allow for an expert to review the report. However, trial counsel maintained that she thoroughly examined the report and reviewed it with the assistance of a medical doctor. Trial counsel stated that she reviewed several medical treatises on the subject involved and prepared extensively for cross-examination of the witness from Our Kids.

Trial counsel was aware that the petitioner had a relatively low IQ and that he had some problems with alcohol and drug use. Trial counsel admitted that she did not have the petitioner evaluated by mental health professionals prior to trial. Trial counsel stated that the petitioner was not helpful in trial preparation. She thought that she advised the petitioner not to testify because she recalled reading the police interview and did not think that the petitioner would make a good witness.

Trial counsel admitted that she did not file a motion to suppress the petitioner's statement to the police, but she defended her actions by stating that she did not think there were grounds present to file the motion. Trial counsel did not recall the petitioner's claims that he was coerced into giving a statement. Trial counsel recalled that she spent a significant amount of time preparing the case for trial.

The petitioner testified that trial counsel met with him "maybe three times" and stayed for approximately fifteen (15) minutes at each visit. The petitioner maintained that trial counsel never discussed a defense strategy but mainly talked about the State's evidence. The petitioner claimed that he gave trial counsel the names of several potential witnesses and that trial counsel informed him that she contacted those individuals.

The petitioner claimed that trial counsel did not inform him of his right to testify. However, the petitioner later admitted that trial counsel warned him that if he were to testify, his prior convictions might be used against him in evidence.

At the conclusion of the post-conviction hearing the post-conviction court took the matter under advisement. In an order entered October 14, 2003, the post-conviction court made the following findings:

> The petitioner's first claim is that the trial attorney failed to call witnesses that would establish his innocence. The petitioner briefly testified at the post-conviction hearing that he notified his trial attorney of a potential teacher from the victim's school who could corroborate his assertion of innocence. The examination of the trial attorney, . . ., brought no additional proof as to the exculpatory potential of the unnamed witness. [Trial counsel] did call a school psychologist to offer insight about the victim's credibility. The Court notes that the proof offered with respect to this claim was minimal at best and would not rise to the burden that the petitioner is required to carry in accordance with Strickland. Due to the lack of clear and convincing evidence in reference to this assertion, the Petitioner's claim is respectfully without merit.

> Secondly, the petitioner asserts that that [sic] trial counsel failed to adequately confer with him, advise him and investigate the case. The Court heard proof from the petitioner's trial attorney, . . . , that she met with the petitioner for "hours" and interviewed several potential witnesses regarding the victim's and the petitioner's mental health "issues." In particular, trial counsel spoke with a physician numerous times to help prepare for the scientific proof of the State's case in regards to victims of sexual abuse. Further, trial counsel testified that she spent "days" researching in preparation for trial on the nature of hymenal injuries by way of medical reports on the victim. In addition, trial counsel testified that when she did speak with the petitioner, specifically when dealing with whether the petitioner should testify on his behalf, she was of the opinion that at all times the petitioner understood the nature

of their conversations. The petitioner testified that trial counsel met with him "three times, ten to fifteen minutes" and that the trial counsel never advised him of his rights. The Court accredits the testimony of [trial counsel] and is of the opinion that the petitioner has failed to carry his burden with respect to this issue.

The petitioner next asserts that trial counsel failed to make a written or oral motion to suppress the petitioner's confession. The State offered proof at trial that the petitioner stated to police that the crimes for which he was indicted and convicted of "may have happened" and that "I sometimes forget when me and my wife have sex." The petitioner testified that the "confession" was the result of police coercion and that he told trial counsel of the circumstances surrounding his statements. Trial counsel conceded on cross examination that no motion to suppress these statements was attempted. However, the likelihood of succeeding at such a hearing would be minimal based on the proof at trial. Further, some of the statements made by the defendant occurred after he left the police department and were made over the phone when the defendant called the police. However, the Court feels that whatever assignment of error, if any, that can be attached to the petitioner's claim was reviewed by the Criminal Court of Appeals who weighed the sufficiency of the convicting evidence. More particularly, the appellate court found the scientific evidence, i.e. the hymenal injury, to be sufficient along with the victim's testimony as to how the injury was inflicted. Deskins, at *4. Therefore, the petitioner's assertion as to the failure of trial counsel to not attempt a suppression of the confession must be respectfully denied.

Next, the petitioner claims that trial counsel failed to adequately impeach the victim's testimony during cross-examination. The trial counsel testified that she spent "numerous" hours reading over psychological reports of the victim in preparation of impeaching the victim's testimony. The trial counsel further stated that trial strategy would be that the victim suffered from depression, attention deficit - hyperactivity disorder, and psychotic features with difficulty reasoning. The Court has reviewed the trial transcript and is of the opinion that trial counsel adequately impeached the victim's credibility. Specifically, the Court notes that the victim's mother was asked about the victim's school behavior and one Dr. Joseph LaBarbera gave detailed information in reference to the victim's behavior and diagnosis. . . . [T]he petitioner has not carried his burden by clear and convincing evidence and, thus, this issue is respectfully without merit.

As his sixth assertion, the petitioner claims that trial counsel failed to interview or subpoena an expert witness to rebut the State's expert who testified as to the victim's hymenal injuries. The trial counsel conceded that she learned after the fact that, though she was retained, she could petition the Administrative Office of the Courts (AOC) for a court-funded expert. However, the trial counsel stated, as noted above, that she did in fact confer frequently with a doctor to help prepare for the

-7-

scientific evidence to be presented at trial. Therefore, she did interview an expert witness to rebut the State's expert as to the hymenal injuries. Further, a review of the record reveals that the trial counsel did an adequate cross-examination of the State's experts. Specifically, trial counsel attempted to impeach by way of a learned treatise pursuant to the Tennessee Rules of Evidence 618. . . . Therefore, the petitioner's assertion is respectfully without merit.

The petitioner claims that trial counsel failed to adequately cross-examine the nurse practitioner who testified to the victim's hymenal injuries. Again, trial counsel testified that she consulted with a physician to enlighten her as to the nature of hymenal injuries and the contents of the medical reports. The Court has reviewed the trial transcript and is of the opinion that [trial counsel] adequately used this information to cross-examine the nurse who testified on behalf of the State. Therefore, this issue is without merit.

Next, the petitioner claims that trial counsel failed to request a psychological evaluation of the petitioner and that this was prejudicial to his case. The Court can summarily dismiss this claim. Trial counsel testified that the defense would be that the petitioner did not commit the acts for which he was charged with. Further, the petitioner testified that "no way it happened" and that the victim was making false accusations. Trial counsel conceded that no mental evaluation was conducted but that she did interview friends and family in order to obtain a better understanding of any potential diminished capacity of the petitioner. However, the Court finds that no psychological evaluation would be relevant at trial, per Rule 401 of the Tennessee Rules of Evidence, if the defense raised was one of innocence - not one of diminished capacity. A psychological evaluation would not have "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable that [sic] it would be without the evidence" since the defense was one of innocence.

After the denial of the petition, the petitioner filed a timely notice of appeal with this Court.

## Analysis
### Post-Conviction Standard of Review

To sustain a petition for post-conviction relief, a defendant must prove his or her factual allegations by clear and convincing evidence at an evidentiary hearing. See Tenn. Code Ann. § 40-30-110(f); Momon v. State, 18 S.W.3d 152, 156 (Tenn. 1999). The post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). During our review of the issue raised, we will afford those findings of fact the weight of a jury verdict, and this Court is bound by the court's findings unless the evidence in the record preponderates against those findings. See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997); Alley v. State, 958 S.W.2d 138, 147 (Tenn. Crim. App. 1997). This Court

may not reweigh or re-evaluate the evidence, nor substitute its inferences for those drawn by the post-conviction court. See State v. Honeycutt, 54 S.W.3d 762, 766 (Tenn. 2001). All questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. See Momon, 18 S.W.3d at 156; Henley, 960 S.W.2d at 578-79. However, the post-conviction court's conclusions of law are reviewed under a purely de novo standard with no presumption of correctness. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

Ineffective Assistance of Counsel

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, the petitioner bears the burden of showing that (a) the services rendered by trial counsel were deficient and (b) that the deficient performance was prejudicial. See Powers v. State, 942 S.W.2d 551, 558 (Tenn. Crim. App. 1996). In order to demonstrate deficient performance, the petitioner must show that the services rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). In order to demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. See Strickland v. Washington, 466 U.S. 668, 694 (1984). "Because a petitioner must establish both prongs of the test to prevail on a claim of ineffective assistance of counsel, failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." Henley, 960 S.W.2d at 580.

As noted above, this Court will afford the post-conviction court's factual findings a presumption of correctness, rendering them conclusive on appeal unless the record preponderates against the court's findings. See id. at 578. However, our supreme court has "determined that issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact . . . ; thus, [appellate] review of [these issues] is de novo" with no presumption of correctness. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999).

Furthermore, on claims of ineffective assistance of counsel, the petitioner is not entitled to the benefit of hindsight. See Adkins v. State, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). This Court may not second-guess a reasonably-based trial strategy, and we cannot grant relief based on a sound, but unsuccessful, tactical decision made during the course of the proceedings. See id. However, such deference to the tactical decisions of counsel applies only if counsel makes those decisions after adequate preparation for the case. See Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

On appeal, the petitioner argues that trial counsel was ineffective because she: (1) should have challenged the victim's competence to testify at trial; (2) failed to have the report from Our Kids evaluated by an expert; (3) failed to file a motion to suppress the petitioner's statement; and (4) failed to call necessary witnesses, adequately investigate the case and confer with the petitioner.

## Motion to Suppress

On appeal, the petitioner first claims that trial counsel was ineffective because she failed to file a motion to suppress the petitioner's statement. The State argues that the petitioner's claim has no merit.

The evidence at the post-conviction hearing indicates that trial counsel could not find any legal basis for a motion to suppress. The record even contained information that showed that the petitioner made several voluntary phone calls to the police after his interview. The petitioner claimed that he told trial counsel that he was coerced into making a statement.

In denying the petition, the post-conviction court gave credibility to the testimony of trial counsel and determined that the likelihood for succeeding at a hearing on a motion to suppress would have been "minimal based on the proof at trial." Further, the post-conviction court noted that some of the statements were made after the petitioner's initial interview when he called the police himself. Moreover, the post-conviction court pointed out that the jury heard that the defendant contended that what he told the police "may have happened" and that he "sometimes forget [sic] when me [sic] and my wife have sex." As stated above, "questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trial of fact" and the post-conviction court's credibility determinations are conclusive on appeal unless the evidence preponderates against them. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). The evidence does not preponderate against the post-conviction court's credibility determination herein. The petitioner has failed to prove by clear and convincing evidence that trial counsel was ineffective in the failing to file a motion to suppress. This issue is without merit.

## Victim's Competence

Next, the petitioner argues that trial counsel should have challenged the victim's competence to testify at trial.

The evidence indicates that trial counsel reviewed the psychological report on the victim and discussed the findings with Dr. LaBarbera prior to trial. The post-conviction court recalled the witness and recalled its conclusion, when sitting as trial court on the matter, that the victim was competent. Tennessee Rule of Evidence Rule 601 presumes that all witnesses are competent to testify unless otherwise provided in the rules or by statute. Further, the determination as to whether the victim was competent to testify was a discretionary decision of the trial court, which will not be overturned on appeal unless the court clearly abused its discretion. State v. Hallock, 875 S.W.2d 285, 293 (Tenn. Crim. App. 1993).

The petitioner did not present any additional proof regarding the victim's competency beyond that which was available at trial to establish that the trial court abused its discretion. The petitioner failed to prove by clear and convincing evidence that trial counsel was ineffective in  failing challenge the competency of the witness. This issue is without merit.

### Failure to Hire Expert

The petitioner argues that trial counsel was ineffective for failing to have the report from Our Kids reviewed by an expert and for failing to challenge the testimony with regard to hymenal injury.

Although, trial counsel stated that she was unaware at the time of the petitioner's trial that she could possibly procure funds for a State hired expert, the proof detailed that trial counsel laboriously reviewed the medical report, consulted several treatises, and had lengthy discussions with a medical doctor regarding the medical report and the conclusions contained therein. Trial counsel testified that she was retained to represent the petitioner and was not provided the funds necessary to hire an expert.

The post-conviction court accredited the testimony of trial counsel and determined that trial counsel did an "adequate undertaking of impeaching the State's expert." There was no expert witness testimony at the post-conviction hearing indicating that such testimony could have called into question the adequacy of the Our Kids report on hymenal injury. Further, while the petitioner was declared indigent for purposes of the post-conviction proceeding, the record is unclear as to the petitioner's status during the trial of the matter. Only indigent defendants are entitled to state funds for expert services. See Tenn. Sup. Ct. R. 13 § 5. Therefore, we find that the petitioner has failed to carry his burden that trial counsel was ineffective on this point.

### Failure to Call Witnesses, Investigate, and Confer With the Petitioner

Lastly, the petitioner claims that trial counsel failed to call the necessary witnesses, failed to adequately investigate the case, and failed to confer with the petitioner. The State again argues that the issue is without merit.

The proof at the post-conviction hearing indicated that trial counsel met with the petitioner several times prior to trial, received a list of potential witnesses, interviewed several potential witnesses, spent days researching issues in the petitioner's defense, and kept the petitioner apprised of the defense as it evolved.

The post-conviction court accredited the testimony of trial counsel, determining that "the proof offered with respect to this claim was minimal at best and would not rise to the burden that the petitioner is required to carry in accordance with Strickland." The petitioner failed to call the witness that he claims trial counsel was deficient in not presenting at trial. There can be no showing of prejudice when the petitioner fails to present the testimony of the potential exculpatory witness. The petitioner has again failed to satisfy the burden to show that trial counsel was ineffective. This issue is without merit.

## Conclusion

For the foregoing reasons, the judgment of the post-conviction court is affirmed.

_____
JERRY L. SMITH, JUDGE